## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **DAVEY MARTINEZ,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:22-cv-2571** |
| | § | |
| **ELIZABETH WEYLER,** | § | |
| **Personal Representative of the** | § | |
| **Estate of Wayne Weyler, Deceased,** | § | |
| **TRAVIS CHRISTENSEN,** | § | |
| **JAMIE PENNAY,** | § | |
| **JASON SAWYER, and** | § | |
| **HENRY STOFFEL,** | § | |
| | § | |
| *Defendants*. | § | |

### PLAINTIFF'S REDACTED ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, DAVEY MARTINEZ, Plaintiff, complaining of ELIZABETH WEYLER,

Personal Representative of the Estate of Wayne Weyler, Deceased, TRAVIS CHRISTENSEN,

JAMIE PENNAY, JASON SAWYER, and HENRY STOFFEL, Defendants, and for causes of

action will respectfully show unto the Court as follows:

> "The right not to be deprived of liberty as a result of the fabrication of evidence by
> a government officer is a general constitutional rule identified in decisional law…"
>
> *Truman v. Orem City*, 1 F.4th 1227, 1240 (10th Cir. 2021).

1

## SUMMARY

On August 29, 2018, Sergeant Wayne Weyler illegally entered Davey Martinez's home and planted cocaine on his dresser after conspiring with Sergeants Travis Christensen, Jamie Pennay, and Jason Sawyer prior to a search warrant being issued for the home. Sergeant Weyler was then caught on video talking about planting evidence. During a subsequent investigation, Sergeant Stoffel helped cover up this conspiracy. Mr. Martinez now sues for violations of his right not to have his liberty deprived as a result of the fabrication of evidence by a government officer.

## REDACTED COMPLAINT

Pursuant to D.C.COLO.LCivR 7.2(c)(4), this Complaint includes redactions due to certain information forming the basis of this lawsuit currently being held under protective order in the criminal case associated with the conduct in this case. A motion has been filed to lift the protective order so that the material can be made public and used in this lawsuit; however, the Complaint is being redacted until the protective order is lifted or other Court Order is issued directing otherwise.

| DISTRICT COURT, MESA COUNTY, COLORADO | |
|---|---|
| Court Address:<br>MESA COUNTY JUSTICE CENTER, 125 NORTH SPRUCE STREET, GRAND JUNCTION, CO, 81501 | DATE FILED: August 12, 2021 3:27 PM<br>CASE NUMBER: 2018CR1765 |
| THE PEOPLE OF THE STATE OF COLORADO<br>v.<br>DAVEY JUILAN MARTINEZ | |
| | ⚠ COURT USE ONLY ⚠ |
| | Case Number: 2018CR1765<br>Division: 10      Courtroom: |
| **ORDER REGARDING RECORDS SUBMITTED FOR IN CAMERA REVIEW** | |

The Court has reviewed the records that were submitted for an *in camera* review on 8/9/2021. Having reviewed the records and for the reasons articulated in RESPONSE TO COUNTY ATTORNEY'S MOTION TO QUASH SDT"Deputy Wayne Weyler, the Court finds it appropriate to release all of the records that were submitted. Those records are in 2 separate documents that the Court will upload and suppress as Document #1 and Document #2.

The Court deems the documents and information CONFIDENTIAL. CONFIDENTIAL information shall not be disclosed or used for any purpose except solely for the purpose of this case or appellate review. CONFIDENTIAL information shall not, without Order of this Court, be disclosed beyond that necessary for the preparation, trial and/or appeal of this case, Case No. 18CR1765, People of the State of Colorado v. Davey Martinez.

Issue Date: 8/12/2021

BRIAN JAMES FLYNN
District Court Judge

2

## I.
## PARTIES

1.    Plaintiff Davey Martinez is a resident of Mesa County, Colorado.

2.    Defendant ELIZABETH WEYLER, Personal Representative of the Estate of Wayne Weyler, is an individual residing in Grand Junction, Mesa County, Colorado and may be served at her residence or wherever she may be found. Wayne Weyler is being sued in his individual capacity.

3.    Defendant TRAVIS CHRISTENSEN is an individual residing in Grand Junction, Mesa County, Colorado and is a Sergeant with the Mesa County Sheriff's Office and may be served at his place of employment at the Mesa County Sheriff's Office located at 215 Rice Street, Grand Junction, CO 81501, or wherever he may be found. Travis Christensen is being sued in his individual capacity.

4.    Defendant JAMIE PENNAY is an individual residing in Grand Junction, Mesa County, Colorado and is a Sergeant with the Mesa County Sheriff's Office and may be served at his place of employment at the Mesa County Sheriff's Office located at 215 Rice Street, Grand Junction, CO 81501, or wherever he may be found. Jamie Pennay is being sued in his individual capacity.

5.    Defendant JASON SAWYER is an individual residing in Grand Junction, Mesa County, Colorado and is a Sergeant with the Grand Junction Police Department and may be served at his place of employment at the Grand Junction Police Department located at 555 Ute Avenue, Grand Junction, CO 81501, or wherever he may be found. Jason Sawyer is being sued in his individual capacity.

6.    Defendant HENRY STOFFEL is an individual residing in Grand Junction, Mesa County, Colorado and is a Sergeant with the Mesa County Sheriff's Office and may be served at

3

his place of employment at the Mesa County Sheriff's Office located at 215 Rice Street, Grand Junction, CO 81501, or wherever he may be found. Henry Stoffel is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

7.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

8.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the District of Colorado, and all or a substantial part of the causes of action accrued in the District of Colorado.

## III.
## FACTS AND ALLEGATIONS

9.    At all times relevant to this lawsuit, Sergeant Jamie Pennay was the Mesa County Sheriff's Office supervisor at the Western Colorado Drug Task Force (WCDTF).

10.    At all times relevant to this lawsuit, Sergeant Jason Sawyer was the Grand Junction Police Department supervisor at the WCDTF.

11.    At all times relevant to this lawsuit, Sergeant Travis Christensen was the supervisor of the Mesa County Sheriff's office Street Crimes Unit (MCSO-SCU).

12.    At all times relevant to this lawsuit, Sergeant Henry Stoffel was an investigator for the Mesa County Sheriff's Office.

13.    At all times relevant to this lawsuit, Sergeant Wayne Weyler worked in the Operations Division of the Mesa County Sheriff's Office.

**Pennay and Sawyer Gathered Cocaine to be Planted**

14.    On August 29, 2018, the WCDTF and the MCSO-SCU were conducting an investigation into possible drug distribution at a residence located in Grand Junction, Colorado.

15.    Plaintiff Davey Martinez lived at the residence and was a target of the investigation.

16.    During the investigation, several traffic stops were made where cocaine was found.

17.    While surveillance on the house was being conducted, a black Volvo station wagon was seen leaving the residence and driving to a McDonald's parking lot.

18.    Defendants Pennay and Sawyer were involved in the surveillance and followed the Volvo to the parking lot where they believed they witnessed a drug transaction.

19.    Over the radio, Defendant Pennay instructed GJPD Officer Smock to contact the involved vehicles.

20.    During this stop, Defendant Pennay actively participated in the search of the suspects and vehicles.

21.    Multiple baggies of cocaine were found.

22.    Defendant Sawyer then went back to Mr. Martinez's residence to meet with Investigator Olson of the WCDTF who was surveilling the house.

23.    Upon information and belief, Defendants Pennay and Sawyer took cocaine from this traffic stop or one of the several other traffic stops involved in the investigation which would later be used to plant evidence at Mr. Martinez's residence.

**Mr. Martinez is Arrested with the "Traffic Stop Cocaine"**

24.    Around three hours later, Investigator Olson advised via radio that Mr. Martinez was leaving the residence.

25.    Deputy K. Stuckenschneider was assisting the WCDTF and notified Sergeant Weyler to perform a traffic stop on Mr. Martinez for driving on a suspended license.

26.    Sergeant Weyler activated his overhead lights to conduct a traffic stop.

27.    Deputy K. Stuckenschneider followed behind Sergeant Weyler as backup.

28.    During the traffic stop, Deputy T. Stuckenschneider arrived to assist.

29.    Deputy T. Stuckenschneider informed Mr. Martinez he was under arrest for driving under suspension.

30.    During the arrest, Deputy T. Stuckenschneider located a plastic bag with cocaine inside of it on Mr. Martinez.

31.    The cocaine located on Mr. Martinez during the traffic stop will henceforth be referred to as the "Traffic Stop Cocaine."

32.    The Traffic Stop Cocaine was given an evidence number of SKE-5.

33.    Mr. Martinez was then taken to the Mesa County Sheriff's Office.

#### Sawyer, Pennay, and Christensen Instructed Weyler to Plant Evidence at the Residence

34.    Following the traffic stop that resulted in the arrest of Mr. Martinez, Sergeant Weyler met Defendants Sawyer, Pennay, and Christensen.

35.    Upon information and belief, it was during this conversation following the arrest of Mr. Martinez that one or more of Defendants Pennay, Sawyer, and Christensen – all supervisors running the investigation into Mr. Martinez – gave Sergeant Weyler cocaine gathered from other traffic stops during the investigation and possibly from the traffic stop involving the Volvo from three hours prior.

6

36.    Upon information and belief, Defendants Pennay, Sawyer, and Christensen then instructed Sergeant Weyler to go to Mr. Martinez's residence and plant the cocaine inside of the residence, which Sergeant Weyler agreed to do.

37.    A search warrant was then sought upon an affidavit indicating cocaine would be found inside of the home.

### Stoffel Conducted an Investigation into the Illegally Planted Evidence

38.    In January of 2019, Defendant Stoffel interviewed Mr. Martinez as part of an investigation into video evidence which came to light depicting Sergeant Weyler discussing illegally planting evidence in Mr. Martinez's case.

39.    Mr. Martinez told Defendant Stoffel that he had a Ring Security Camera which captured a video that showed Sergeant Weyler illegally enter Mr. Martinez's home.

40.    Mr. Martinez also told Defendant Stoffel that in another video you can hear Sergeant Weyler talking with another officer about planting evidence.

41.    Defendant Stoffel obtained these videos from Facebook as well as from Mr. Martinez's wife and continued an investigation into Sergeant Weyler's conduct on August 29, 2018.

42.    

43.    





44. ██████████████████████████████████████

████████████████████████

45. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████

46. ████████████████████████████████████████

████████████████████████████

47. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

48. ████████████████████████████████████████

██████████

49. ████████████████████████████████████████

██████████████████████████████████

**Weyler Planted Cocaine Inside of the Residence**

50. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

51.    Following this conversation, Sergeant Weyler went to Mr. Martinez's home.

52.    Sergeant Marco Montez heard a request over the radio for additional units and went to Mr. Martinez's residence where he met Sergeant Weyler.

53.    Sergeants Weyler and Montez approached the front door of the residence.

54.    At the time when Sergeants Weyler and Montez arrived at the residence, a search warrant had not been signed.

55.    Mr. Martinez had a Ring security camera on his front porch filming his front door area.

56.    This Ring camera uploaded video from when Sergeants Weyler and Montez made contact with the residence, following, upon information and belief, Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

57.    Sergeant Weyler knocked on the front door.

58.    A teenage male answered.

59.    Sergeant Weyler asked to speak with the teenager's mother, Mr. Martinez's wife.

60.    Mr. Martinez's wife came to the door, stepped out onto the porch, and closed the front door behind her.

61.    Sergeant Weyler told her that they had arrested her husband and they had her daughter.

62.    Sergeant Weyler then stated that her son who initially answered the door appeared to be high and he wanted to see him again.

63.    When that teenage boy walked outside, Sergeant Weyler walked inside of the home.

64.    As Sergeant Weyler walked into the home, Mr. Martinez's wife objected to him going inside.

65.    As a result, Sergeant Weyler did not have consent to enter the home.

66.    ████████████████████████████████████████████

██████████████████████████████████

67.    Since the search warrant had not yet been signed, Sergeant Weyler did not have authority to enter the home based off a warrant.

68.    ████████████████████████████████████████████████

████████████████████████████████████████

69.    Sergeant Wyler did not have information giving him exigent circumstances to enter the residence.

70.    ████████████████████████████████████████████████

████████████████████████████████████

71.    Sergeant Weyler claimed that he entered the home to perform a protective sweep.

72.    ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

73.    Thus, Sergeant Wyler was not aware of any facts which would allow him to enter the home to perform a protective sweep because none existed.

74.    Accordingly, Sergeant Weyler's entry into the home was illegal.

75.    Upon information and belief, Sergeant Weyler committed an illegal entry into the home, despite knowing a search warrant was going to be signed later that day, for the purpose of planting cocaine pursuant to Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

76.    Furthermore, Sergeant Weyler did not write a report of what he did or why he took the actions he did.

10

77.     Upon information and belief, Sergeant Weyler did not document his entry into the home or why he went into the home because he knew his entry was unjustified and illegal and for the illegal purpose of planting cocaine pursuant to Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

78.     While Sergeant Weyler was illegally inside of Mr. Martinez's residence, he planted a bag of cocaine on the dresser in the master bedroom – which Sergeant Weyler assumed was Mr. Martinez's room.

79.     Interestingly, there was other contraband in various rooms of the home which would have been seen in plain view if Sergeant Weyler was in fact conducting a protective sweep as he later claimed, despite not documenting his protective sweep.

80.     If Sergeant Weyler would have actually been conducting a legally authorized protective sweep of the home, he would have been able to confiscate the illegal contraband seen in plain view.

81.     However, Sergeant Weyler did not even make note of seeing illegal contraband in the home while he was inside of it, due to not documenting his actions.

82.     Upon information and belief, Sergeant Weyler did not attempt to confiscate or secure and preserve the contraband due to knowing that he was illegally inside of the home for the illegal purpose of planting cocaine pursuant to Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

83.     Following the search warrant being eventually signed by Judge Richard Gurley, officers searched the residence and collected evidence to pursue charges against Mr. Martinez.

84.     One of the pieces of evidence collected was a bag of cocaine found on the dresser in the master bedroom.

85.    This was the only cocaine out in plain view found in the master bedroom.

86.    This is the bag of cocaine that Sergeant Weyler planted while illegally inside of the home pursuant to Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

87.    This cocaine will henceforth be referred to as the "Illegally Planted Cocaine."

88.    The Illegally Planted Cocaine was given an evidence number of CDBC5.

### The Illegally Planted Cocaine Did Not Match the Traffic Stop Cocaine

89.    During the criminal case against Mr. Martinez stemming from his traffic stop and arrest and the search of his home, Mr. Martinez's criminal defense attorneys, Kimberly Van Dyke and Sarah Tenhoff, had the Traffic Stop Cocaine lab tested against the Illegally Planted Cocaine.

90.    The Traffic Stop Cocaine was determined to be 64.1% cocaine base by weight.

91.    The Illegally Planted Cocaine was determined to be less than 1% cocaine base by weight.

92.    This demonstrates that the cocaine found on Mr. Martinez during the traffic stop was clearly not of the same cocaine found on his dresser during the execution of the search warrant.

93.    This is because the cocaine found on the dresser inside of the home was planted there by Sergeant Weyler pursuant to Sergeant Weyler's agreement with Defendants Pennay, Sawyer, and Christensen to plant cocaine inside of the home.

### Stoffel Misrepresented the Reliability of the Video of Weyler Admitting to Planting the Cocaine

94.    A Ring video captured Sergeant Weyler talking to another officer outside of Mr. Martinez's home.

95.    This video will henceforth be referred to as the "Planting Evidence Video."

96.    The officers cannot be seen in the video but can only be heard talking.

97.     Sergeant Weyler can be heard stating he planted something.

98.     The other officer then asks about Defendant Sawyer.

99.     Upon information and belief, Sergeant Weyler was talking about planting the cocaine he was given during the conversation where he agreed with Defendants Pennay, Sawyer, and Christensen that he would plant cocaine at Mr. Martinez's residence.

100.    During Defendant Stoffel's investigation into whether Sergeant Weyler planted evidence in Mr. Martinez's case, Defendant Stoffel was presented with the Ring video which depicts Sergeant Weyler discussing planting the evidence.



105.    However, Forensic Examiner Jordan Huslig confirmed with Mr. Martinez's criminal defense attorneys that he did not conclude the Planting Evidence Video was tampered with, but only that it was not saved consistent with the way Ring.com stores/creates video.

106. Huslig explained to Mr. Martinez's criminal defense attorneys that it would make sense that the video was saved in this format if it was originally uploaded to something like Facebook in an .MP4 format and then later downloaded from Facebook in that .MOV format.

107. Huslig further explained to Mr. Martinez's criminal defense attorneys that it does not mean it was tampered with in the fabrication sense as Defendant Stoffel suggests in his finding for the reason he should discredit and ignore the evidence in the video of Sergeant Weyler planting evidence at Mr. Martinez's house.

108. Upon information and belief, Defendant Stoffel misrepresented Forensic Examiner Huslig's findings so that Defendant Stoffel could cover up the conspiracy between Sergeant Weyler and Defendants Pennay, Sawyer, and Christensen to plant cocaine in Mr. Martinez's home.

109. Upon information and belief, Defendant Stoffel learned of this conspiracy while investigating the allegation itself and interviewing Sergeant Weyler, Defendant Pennay, and Defendant Christensen.

110. Upon information and belief, Defendant Stoffel agreed to join the conspiracy by covering up the fabrication of evidence instead of shining a light on it which would have cost Sergeant Weyler and Defendants Pennay, Sawyer, and Christensen their jobs.

111. This is why Defendant Stoffel misrepresented Jordan Huslig's findings.

**The Illegally Planted Cocaine was Used Against Mr. Martinez**

112. As a result of the Illegally Planted Cocaine being collected during execution of the search warrant, Mr. Martinez faced criminal charges associated with the Illegally Planted Cocaine.

113. Mr. Martinez was charged with various criminal offenses including intent to distribute as a result of the Illegally Planted Cocaine being recovered during execution of the search warrant.

14

114.    Criminal charges related to the Illegally Planted Cocaine were relied upon in setting Mr. Martinez's bonds, which both held Mr. Martinez in custody and then restricted his liberty while out on bond conditions.

115.    Mr. Martinez was held in custody as a result of not being able to post bond from August 30, 2018 through May 17, 2019.

116.    On May 17, 2019, the bond was modified to allow a surety and Mr. Martinez was able to get out of custody; however, his liberty remained restricted as he was required to abide by bond conditions.

117.    Thus, the Illegally Planted Cocaine was used to deprive Mr. Martinez of liberty.

118.    Criminal charges related to the Illegally Planted Cocaine were referenced at Mr. Martinez's preliminary hearing and were bound over for trial following the preliminary hearing.

119.    At the preliminary hearing, the judge directly asked the prosecutor, George Holley, if the criminal counts for possession of cocaine and for possession with intent to sell cocaine related to the cocaine found in the home or items located in the vehicle or both, and Mr. Holley stated that the prosecution could have alternate theories.

120.    This indicates that the prosecution was going to rely on the Illegally Planted Cocaine in addition to the Traffic Stop Cocaine.

121.    Then, while explaining why the Court was binding over charges, the Judge referenced the cocaine found inside of the home, which was the Illegally Planted Cocaine.

122.    As a result, the Illegally Planted Cocaine was used against Mr. Martinez in his criminal case.

**Mr. Martinez's Criminal Charges Related to the Illegally Planted Cocaine Terminated Favorably for Him**

123.    Initially, all charges against Mr. Martinez stemming from both the traffic stop and the house search were originally part of Mesa County Criminal Case 18CR1765.

124.    The charges stemming from the traffic stop and pertaining to the Traffic Stop Cocaine were severed into new Mesa County Criminal Case 21CR1308.

125.    This left the charges stemming from the house search and pertaining to the Illegally Planted Cocaine in Mesa County Criminal Case 18CR1765.

126.    On August 18, 2021, a plea agreement was filed in Mesa County Criminal Case 18CR1765 only because Mesa County Criminal Case 21CR1308 did not exist yet.

127.    On August 26, 2021, the same plea agreement was re-filed in newly created Mesa County Criminal Case 21CR1308.

128.    This plea agreement called for Mesa County Criminal Case 18CR1765, which included all counts related to the house search and pertaining to the Illegally Planted Cocaine, to be dismissed.

129.    On August 26, 2021, the plea was entered in court at a hearing.

130.    On September 30, 2021, Mesa County Criminal Case 18CR1765, which included all counts related to the house search and pertaining to the Illegally Planted Cocaine, was dismissed.

131.    Thus, Mr. Martinez was never convicted or sentenced for any of the charges related to the Illegally Planted Cocaine.

132.    The defendants were at all times acting under color of law.

## IV.
## CAUSES OF ACTION

### Count One

**Due Process Violation for Fabrication of Evidence**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Weyler**

133.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

134.    The Fourteenth Amendment provides in pertinent part, "No State shall … deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend XIV, § 1.

135.    The right not to be deprived of liberty as a result of the fabrication of evidence by a government officer was clearly established by *Pierce* at the time of the conduct making the basis of this lawsuit which occurred in 2018. *Truman v. Orem City*, 1 F.4th 1227, 1240 (10th Cir. 2021) (finding the right was clearly established in 2013); citing *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).

136.    The statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor. *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55, 204 L. Ed. 2d 506 (2019).

137.    Mesa County Criminal Case 18CR1765, which included all counts related to the house search and pertaining to the Illegally Planted Cocaine, terminated in Mr. Martinez's favor when it was dismissed on September 30, 2021.

138.    To sufficiently state a violation of constitutional rights due to fabrication of evidence, a plaintiff must plead facts showing what evidence was fabricated as well as how the

17

fabricated evidence was used against him. *Warnick v. Cooley*, 895 F.3d 746, 752-53 (10th Cir. 2018).

139.    To state a fabrication of evidence claim, a plaintiff must allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. *Truman*, 1 F.4th at 1236; *See Warnick*, 895 F.3d at 753; *Heck v. Humphrey*, 512 U.S. 477, 478, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

140.    First, Mr. Martinez has pleaded facts sufficient to show that Weyler fabricated evidence by stating the facts in paragraphs 8 through 103, *supra*.

141.    Second, the fabricated evidence – the cocaine allegedly found at Mr. Martinez's home – was used against him in court when bonds were set contemplating the evidence and when the district attorney presented evidence regarding the fabricated evidence at the preliminary hearing and the judge then bound charges related to the fabricated evidence over for trial.

142.    Third, Mr. Martinez's liberty was deprived as a result of the use of this fabricated evidence as he was held in custody on a bond he could not make and then had his liberty restricted while he was out of custody on bond as a result of charges related to the fabricated evidence all while being forced to defend against charges which were based on fabricated evidence in violation of his clearly established due process rights.

143.    Fourth, Mr. Martinez's criminal charges related to the fabricated evidence were dismissed on September 30, 2021, meaning there is no *Heck* bar in this case.

144.    Accordingly, Mr. Martinez has pleaded facts sufficient to support Count 1 – that Weyler fabricated evidence by planting cocaine at his home resulting in criminal charges against

Mr. Martinez, which terminated in Mr. Martinez's favor when they were ultimately dismissed on September 30, 2021.

145. Sergeant Weyler was at all times acting under the color of law.

146. As a result, Mr. Martinez's suffered deprivations of his liberties.

147. Mr. Martinez's damages were not caused by any other means.

**Count Two**

**Conspiracy to Fabricate Evidence**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Weyler, Christensen, Sawyer, Pennay, and Stoffel**

148. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

149. The Tenth Circuit has recognized a cause of action for a "§ 1983 conspiracy claim," which it defined as "a conspiracy to violate a right protected by § 1983; in other words, a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Licerio v. Lamb*, No. 20-CV-00681-WJM-STV, 2021 WL 4556092, at *17 (D. Colo. July 15, 2021), *report and recommendation adopted*, No. 20-CV-0681-WJM-STV, 2021 WL 4167341 (D. Colo. Sept. 14, 2021); quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

150. "[T]o prevail on such a claim, 'a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'" *Id.*; quoting *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (quoting *Dixon*, 898 F.2d at 1449).

151. A plaintiff asserting a § 1983 conspiracy claim must plead that he was (1) deprived of a constitutional right (2) by a conspiracy comprised of or including conspirators acting

under color of state law. *Moses-El v. City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *17 (10th Cir. May 31, 2022); *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

152.    Indeed, the "essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id.*

153.    In the § 1983 context, the agreement must relate to "some deprivation of a federally protected right." *Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir.), *cert. denied*, 142 S. Ct. 427, 211 L. Ed. 2d 251 (2021).

154.    A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all the participants therein." An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences." *Frasier*, 992 F.3d at 1024–25; citing *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990); quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

155.    While a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim, proof of an agreement to deprive often will require examination of conduct occurring prior to the deprivation. *Snell*, 920 F.2d at 701–02.

156.    Frequently, a conspiracy must be proven with circumstantial evidence because "[r]arely ... will there be direct evidence of an express agreement among all the conspirators to

20

conspire." *Snell* v, 920 F.2d at 702; quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260 (7th Cir.1984).

157.    First, Martinez has sufficiently pleaded facts supporting a violation of a federally protected right by pleading that evidence was fabricated against him when Weyler planted cocaine at his home and then that fabricated evidence was used against him in court when criminal charges were brought against Martinez, which terminated in Martinez's favor when they were ultimately dismissed on September 30, 2021 following his liberty being restricted while he was held in custody and required to adhere to the conditions of bond while defending against the criminal charges.

158.    Plaintiff has also sufficiently pleaded facts supporting a conspiracy between Weyler and Defendants Christensen, Sawyer, Pennay, and Stoffel.

### **Defendant Christensen**

159.    Defendant Christensen was the supervisor of the MCSO-SCU.

160.    On August 29, 2018, the WCDTF and the MCSO-SCU were conducting an investigation into possible drug distribution at a residence located in Grand Junction, Colorado.

161.    Plaintiff Martinez lived at the residence and was a target of the investigation.

162.    During the investigation, several traffic stops were made where cocaine was found.

163.    ██████████████████████████████████████████████

██████████████████████████████████

164.    Upon information and belief, it was during this conversation following the arrest of Mr. Martinez that one or more of Defendants Pennay, Sawyer, and **Christensen** – all supervisors running the investigation into Mr. Martinez – gave Sergeant Weyler cocaine gathered from other

traffic stops during the investigation and possibly from the traffic stop involving the Volvo from three hours prior.

165.    Upon information and belief, Defendants Pennay, Sawyer, and **Christensen** then instructed Sergeant Weyler to go to Mr. Martinez's residence and plant the cocaine inside of the residence, which Sergeant Weyler agreed to do.

166.    Notably, in January of 2019, Defendant Stoffel began an investigation into Sergeant Weyler's conduct during the investigation into Mr. Martinez following evidence coming to light that Sergeant Weyler illegally entered Mr. Marinez's home and planted evidence.



167.

168.

169.

170.

171.

172.

███████████████████████████████████████████████

██████████████████

173.     █████████████████████████████████████████████████████

████████

174.     The misrepresentations by each of these co-conspirators is evidence of their conspiracy and their efforts to cover it up.

**Defendants Pennay and Sawyer**

175.     On August 29, 2018, the WCDTF and the MCSO-SCU were conducting an investigation into possible drug distribution at a residence located in Grand Junction, Colorado.

176.     Plaintiff Davey Martinez lived at the residence and was a target of the investigation.

177.     During the investigation, several traffic stops were made where cocaine was found.

178.     While surveillance on the house was being conducted, a black Volvo station wagon was seen leaving the residence and driving to a McDonald's parking lot.

179.     Defendants **Pennay** and **Sawyer** were involved in the surveillance and followed the Volvo to the parking lot where they believed they witnessed a drug transaction.

180.     Over the radio, Defendant **Pennay** instructed GJPD Officer Smock to contact the involved vehicles.

181.     During this stop, Defendant **Pennay** actively participated in the search of the suspects and vehicles.

182.     Multiple baggies of cocaine were found.

183.     Defendant **Sawyer** then went back to Mr. Martinez's residence to meet with Investigator Olson of the WCDTF who was surveilling the house.

23

184.    Upon information and belief, Defendants **Pennay** and **Sawyer** took cocaine from this traffic stop or one of the several other traffic stops involved in the investigation which would later be used to plant evidence at Mr. Martinez's residence.

185.    ███████████████████████████████████████████████████████

███████████████████████████████████████

186.    Upon information and belief, it was during this conversation following the arrest of Mr. Martinez that one or more of Defendants **Pennay**, **Sawyer**, and Christensen – all supervisors running the investigation into Mr. Martinez – gave Sergeant Weyler cocaine gathered from other traffic stops during the investigation and possibly from the traffic stop involving the Volvo from three hours prior.

187.    Upon information and belief, Defendants **Pennay**, **Sawyer**, and Christensen then instructed Sergeant Weyler to go to Mr. Martinez's residence and plant the cocaine inside of the residence, which Sergeant Weyler agreed to do.

188.    Notably, in January of 2019, Defendant Stoffel began an investigation into Sergeant Weyler's conduct during the investigation into Mr. Martinez following evidence coming to light that Sergeant Weyler illegally entered Mr. Marinez's home and planted evidence.

189.    During that investigation conducted by Defendant Stoffel, Sergeant Weyler, Defendant **Pennay**, and Defendant Christensen were all interviewed.

190.    ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

24



191.

192.

193.

194.

195.

196.

**Defendant Stoffel**

197.    During Defendant **Stoffel's** investigation into whether Sergeant Weyler planted evidence in Mr. Martinez's case, Defendant **Stoffel** was presented with the Ring video which depicts Sergeant Weyler discussing his planting the evidence.

198.

199.

200. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

201. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

202. However, Forensic Examiner Jordan Huslig confirmed with Mr. Martinez's criminal defense attorneys that he did not conclude the Planting Evidence Video was tampered with, but only that it was not saved consistent with the way Ring.com stores/creates video.

203. Huslig explained to Mr. Martinez's criminal defense attorneys that it would make sense that the video was saved in this format if it was originally uploaded to something like Facebook in an .MP4 format and then later downloaded from Facebook in that .MOV format.

204. Huslig further explained to Mr. Martinez's criminal defense attorneys that it does not mean it was tampered with in the fabrication sense as Defendant **Stoffel** suggests in his finding for the reason he should discredit and ignore the evidence in the video of Sergeant Weyler planting evidence at Mr. Martinez's house.

205. Upon information and belief, Defendant **Stoffel** misrepresented Forensic Examiner Huslig's findings so that Defendant **Stoffel** could cover up the conspiracy between Sergeant Weyler and Defendants Pennay, Sawyer, and Christensen to plant cocaine in Mr. Martinez's home.

206. Upon information and belief, Defendant **Stoffel** learned of this conspiracy while investigating the allegation itself and interviewing Sergeant Weyler, Defendant Pennay, and Defendant Christensen.

207.    Upon information and belief, Defendant **Stoffel** agreed to join the conspiracy by covering up the fabrication of evidence instead of shining a light on it which would have cost Sergeant Weyler and Defendants Pennay, Sawyer, and Christensen their jobs.

208.    This is why Defendant **Stoffel** misrepresented Jordan Huslig's findings.

209.    This conspiracy between Weyler, Christensen, Sawyer, Pennay, and Stoffel was a violation of Martinez's Fourteenth Amendment right to due process and not to have evidence fabricated and used against him in criminal court. *Truman*, 1 F.4th at 1240; *Pierce*, 359 F.3d 1279; *Warnick*, 895 F.3d at 753; *McDonough v. Smith*, 139 S. Ct. 2149.

210.    At all times during the conspiracy, Weyler, Christensen, Sawyer, Pennay, and Stoffel were acting under color of law as Sergeants for the Mesa County Sheriff's Office.

211.    As a result, Mr. Martinez's suffered deprivations of his liberties.

212.    Mr. Martinez's damages were not caused by any other means.

## V.
## PUNITIVE DAMAGES

213.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

214.    When viewed objectively from the standpoint of Weyler, Christensen, Sawyer, Pennay, and Stoffel at the time of the occurrence, their conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

215.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Weyler, Christensen, Sawyer, Pennay, and Stoffel which was recklessly or callously indifferent to Plaintiff's protected rights, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## <u>DAMAGES</u>

216.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

217.    Mr. Martinez's injuries were a foreseeable event.

218.    Those injuries were directly and proximately caused by Weyler, Christensen, Sawyer, Pennay, and Stoffel agreement to plant evidence of a crime to be used to frame Mr. Martinez as well as the fact that the evidence was planted by Weyler, and then the fabrication of evidence was covered up through investigation by Stoffel once he was brought in on the agreement with Weyler, Christensen, Sawyer, and Pennay.

219.    As a result, Mr. Martinez is entitled to recover all actual damages allowed by law. Plaintiff contends Weyler, Christensen, Sawyer, Pennay, and Stoffel's conduct constitutes malice, evil intent, or reckless or callous indifference to Mr. Martinez's legally protected rights.

220.    Thus, Plaintiff is entitled to punitive damages against Weyler, Christensen, Sawyer, Pennay, and Stoffel.

221.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Martinez was forced to suffer: Losses of liberty and due process.

222.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## <u>ATTORNEY'S FEES</u>

223.    If Plaintiff prevails in this action on claims pursuant to 42 U.S.C. § 1983, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

224.    Plaintiff respectfully requests a jury trial.


## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered

against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff

further prays for all other relief, both legal and equitable, to which the Court finds that Plaintiff is

justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS
SCOTT H. PALMER
BREANTA BOSS
Scott H. Palmer, P.C.
15455 Dallas Parkway
Suite 540, LB 32
Addison, TX 75001
Telephone: (214) 987-4100
Fax: (214) 922-9900
Email:  james@scottpalmerlaw.com
        scott@scottpalmerlaw.com
        breanta@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF
DAVEY MARTINEZ

29